JS 44   (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GABRIEL C. BARNES

## DEFENDANTS

JAMES SLAUGHTER, ADMINISTRATOR, EAST JERSEY STATE PRISON

**(b)** County of Residence of First Listed Plaintiff   imprisoned (Salem)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Union
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael Confusione (MC-6855) , HEGGE & CONFUSIONE, LLC
P.O. Box 366, Mullica Hill, NJ 08062; (800) 790-1550

Attorneys *(If Known)*
NEW JERSEY OFFICE OF ATTORNEY GENERAL, DIVISION OF CRIMINAL JUSTICE, APPELLATE SECTION, HUGHES JUSTICE COMPLEX, P.O. BOX 086, TRENTON, NJ 08625

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | Exchange |
| | Medical Malpractice | | Leave Act | | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☒ 530 General | | | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 2254

Brief description of cause:
Petition for Habeas Corpus Relief per 28 U.S.C. § 2254

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   none

DOCKET NUMBER

DATE
11/10/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael Confusione

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

AO 241
(Rev. 01/15)

Page 2

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: New Jersey |
|---|---|

| Name (under which you were convicted):<br><br>Gabriel C. Barnes | Docket or Case No.: |
|---|---|

| Place of Confinement :<br>East Jersey State Prison, Lock Bag R, Rahway, NJ 07065 | Prisoner No.:<br><br>SBI No. 000355547E |
|---|---|

| Petitioner (include the name under which you were convicted)<br><br>Gabriel C. Barnes | v. | Respondent (authorized person having custody of petitioner)<br><br>James Slaughter, ADMINISTRATOR,<br>EAST JERSEY STATE PRISON |
|---|---|---|

| The Attorney General of the State of: New Jersey |
|---|

## PETITION

1.     (a) Name and location of court that entered the judgment of conviction you are challenging:

Superior Court of New Jersey, Law Division, Criminal Part, Essex County,  50 W Market St, Newark, NJ

        (b) Criminal docket or case number (if you know):   Ind. No. 2013-01-178

2.     (a) Date of the judgment of conviction (if you know):   07/30/2015

        (b) Date of sentencing:   07/13/2015

3.     Length of sentence:   18 years NJSP with 85% parole disqualifier

4.     In this case, were you convicted on more than one count or of more than one crime?   ☑ Yes   ❒ No

5.     Identify all crimes of which you were convicted and sentenced in this case:

first degree robbery; second degree conspiracy to commit robbery; sec. deg. unlawful poss weapon;

fourth degree conspiracy to commit false swearing

6.     (a) What was your plea? (Check one)

        ☑ (1)   Not guilty      ❒ (3)   Nolo contendere (no contest)

        ❒ (2)   Guilty      ❒ (4)   Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   n/a

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury        ☐ Judge only

7.   Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes        ☑ No

8.   Did you appeal from the judgment of conviction?

☑ Yes        ☐ No

9.   If you did appeal, answer the following:

(a) Name of court:   New Jersey Superior Court, Appellate Division

(b) Docket or case number (if you know):   A-0210-15T1

(c) Result:   convictions and sentence affirmed

(d) Date of result (if you know):   11/01/2017

(e) Citation to the case (if you know):

(f) Grounds raised:   Trial court erred in denying motion for new trial; defendant's Fifth Amendment right was violated; prosecutor improperly vouched for State witness; Due process (Wade) violation; excessive sentence

(g) Did you seek further review by a higher state court?        ☑ Yes        ☐ No

If yes, answer the following:

(1) Name of court:   New Jersey Supreme Court

(2) Docket or case number (if you know):   C-740

(3) Result:   petition for certification denied

(4) Date of result (if you know):   04/17/2018

(5) Citation to the case (if you know): _____

(6) Grounds raised:          same as No. 9 (f) above

_____

_____

_____

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐  Yes    ☑  No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

_____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?    ☑  Yes    ☐  No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:    New Jersey Superior Court, Law Division, Criminal Part, Essex County

(2) Docket or case number (if you know):    Ind. No. 13-01-0178

(3) Date of filing (if you know):    01/23/2019

(4) Nature of the proceeding:    PCR

(5) Grounds raised:   ineffective assistance of trial counsel

counsel failed to impeach Detective James' credibility at trial with information regarding

his solicitation of defendant's mother and related information

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes    ☑  No

(7) Result:    claim denied

(8) Date of result (if you know):    01/21/2020

(b) If you filed any second petition, application, or motion, give the same information:

      (1) Name of court:   n/a

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _____

      (5) Grounds raised: _____

                       _____

                       _____

                       _____

                       _____

                       _____

                       _____

                       _____

      (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ❐ Yes    ❐ No

      (7) Result: _____

      (8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

      (1) Name of court: _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _____

      (5) Grounds raised: _____

                       _____

                       _____

                       _____

                       _____

                       _____

                       _____

                       _____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❑ Yes     ❑ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:     ✔ Yes     ❑ No

(2) Second petition:   ❑ Yes     ❑ No

(3) Third petition:    ❑ Yes     ❑ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:**   The prosecutor's comments at trial violated defendant's right against self-incrimination

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In opening statement, the prosecutor outlined the evidence the State expected to present. After describing the events surrounding the robbery and defendant's departure from the scene, the prosecutor told the jury that defendant returned to the area five to ten minutes later. He noted that defendant "is under no obligation to testify," but then stated, "So we might never know why he came back. But the State submits that it will offer adequate evidence for you to make the reasonable inference that he came back for that magazine. He wanted to clear any link to his culpability. He knew what he had done and knew what he had left, so he came back to get it."

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

_____

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ✔ Yes    ❑ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❑ Yes    ✔ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?    ❑ Yes    ❑ No

(4) Did you appeal from the denial of your motion or petition?    ❑ Yes    ❑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ❑ Yes    ❑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

AO 241                                                                                                    Page 8
(Rev. 01/15)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:    none

---

**GROUND TWO:**            The prosecutor's comments violated defendant's right to a fair trial under the Due

Process clause of the 14th amendment

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The prosecutor vouched for the police witnesses by telling the jury in closing argument as follows:

"For some reason, [on] August 26, 2012 [the police officers] woke up and they said we're nailing Gabriel Barnes

and Detective James ... decided to go along and he said I'm going to manipulate this photo array for all my

years[,] 12, 13[,] years as a detective in the Major Crimes Bureau." Detective James is going to wake up and

frame this guy right here, Gabriel Barnes, never seen him before. That's what he did. August 26 [James] got

some imaginary phone call [that] said hey guys, it's time to frame Gabriel Barnes and that's what he did .... That's

what defense counsel told you."

(b) If you did not exhaust your state remedies on Ground Two, explain why:    n/a

(c)       **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ✔ Yes      ❏  No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)       **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏  Yes      ✔ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?                     ❏   Yes        ❏   No

(4) Did you appeal from the denial of your motion or petition?                ❏   Yes        ❏   No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ❏   Yes        ❏   No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you
have used to exhaust your state remedies on Ground Two :   none_____

_____

_____

_____

**GROUND THREE:**          The identification evidence was impermissibly suggestive and violated
defendant's due process rights_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

A "tapping sound" heard on recording of the photo array procedure indicated that the police were telling the

witnesses which photo to choose.  Witness Gerardo Lebron had identified photos number one and two according

to the written forms, yet the audio recording indicates he made only one selection.  Markings on the photos were

different than what the audio indicated.  Two of the four alleged eyewitnesses could not identify defendant as one

of the claimed perpetrators in question.

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why:

_____

_____

_____

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ✔ Yes    ❐ No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❐ Yes    ✔ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?    ❐ Yes    ❐ No

(4) Did you appeal from the denial of your motion or petition?    ❐ Yes    ❐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ❐ Yes    ❐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: _____

_____

**GROUND FOUR:**    Ineffective assistance of counsel
_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

trial counsel failed to pursue and present evidence impeaching the veracity of Detective James and the

surrounding prosecution of the case.  Detective James claimed he did not know defendant but, in fact, was

known to defendant's family because Detective James had been dating defendant's mother's cousin. After

defendant's arrest, defendant's mother met with Detective James, moreover; James propositioned the mother

"and made it clear that if she would cooperate with him in a sexual tryst that he would take care of" defendant's

case. When defendant's mother aborted the planned sex, Det. James then testified against defendant at trial.

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)      **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?          ❏  Yes     ✔ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

ineffective assistance claim based on information beyond trial transcripts so raised on PCR below
_____

(d)      **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

✔ Yes      ❏  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:    Petition for Post-Conviction Relief
_____

AO 241                                                                                                    Page 12
(Rev. 01/15)

Name and location of the court where the motion or petition was filed: See Answer to No. 11 above

Docket or case number (if you know): See Answer to No. 11 above

Date of the court's decision: 01/21/2020

Result (attach a copy of the court's opinion or order, if available): attached

(3) Did you receive a hearing on your motion or petition?                          ☐  Yes        ☑  No

(4) Did you appeal from the denial of your motion or petition?                     ☑  Yes        ☐  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☑  Yes        ☐  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

New Jersey, Superior Court, Appellate Division, Trenton, NJ

Docket or case number (if you know): A-2379-19

Date of the court's decision: 03/22/2021

Result (attach a copy of the court's opinion or order, if available): attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 01/15)

13.    Please answer these additional questions about the petition you are filing:

     (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

          having jurisdiction?  ☑ Yes    ☐ No

          If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

          presenting them: _____

          _____

          _____

          _____

     (b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so, which

          ground or grounds have not been presented, and state your reasons for not presenting them:

          no _____

          _____

          _____

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

     that you challenge in this petition?  ☐ Yes    ☑ No

     If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

     raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

     of any court opinion or order, if available. _____

     _____

     _____

     _____

     _____

     _____

     _____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

     the judgment you are challenging?  ☐ Yes    ☑ No

     If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

     raised. _____

     _____

     _____

     _____

     _____

AO 241
(Rev. 01/15)

16.     Give the name and address, if you know, of each attorney who represented you in the following stages of the
judgment you are challenging:

(a) At preliminary hearing:     Brooke Barnett, Esq., 60 Park Place, Suite 1000 Newark, New Jersey 07102

(b) At arraignment and plea:     Brooke Barnett, Esq., 60 Park Place, Suite 1000 Newark, New Jersey 07102

(c) At trial:     Brooke Barnett, Esq., 60 Park Place, Suite 1000 Newark, New Jersey 07102

(d) At sentencing:     Brooke Barnett, Esq., 60 Park Place, Suite 1000 Newark, New Jersey 07102

(e) On appeal:     Nancy C. Ferro, Esq., 31 E. Ridgewood Ave., Ridgewood, NJ 07450

(f) In any post-conviction proceeding:     Nancy C. Ferro, Esq., 31 E. Ridgewood Ave., Ridgewood, NJ

(g) On appeal from any ruling against you in a post-conviction proceeding:

Nancy C. Ferro, Esq., 31 E. Ridgewood Ave., Ridgewood, NJ 07450

17.     Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?          ☐ Yes     ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?          ☐ Yes     ☐ No

18.     TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

n/a (petition is timely)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 06/13)

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

**vacate convictions and sentence imposed by state court**

or any other relief to which petitioner may be entitled.

**/s/ Michael Confusione**

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on                          (month, date, year).

Executed (signed) on     _11/10/21_     (date).

_Gabriel Barnes_

Signature of Petitioner

I declare (or certify, verify, or state) under penalty of perjury that I have been notified that I must include in this petition all the grounds for relief from the conviction or sentence that I challenge, and that I must state the facts that support each ground. I also understand that if I fail to set forth all the grounds in this petition, I may be barred from presenting additional grounds at a later date.

Executed (signed) on  *November*      (date) *10, 2021*

Signature of Petitioner

*Gabriel Barnes*

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

FILED, Clerk of the Supreme Court, 03 Nov 2021, **085785**

SUPREME COURT OF NEW JERSEY
C-240 September Term 2021
085785

State of New Jersey,

    Plaintiff-Respondent,

     v.                    O R D E R

Gabriel C. Barnes,

    Defendant-Petitioner.

A petition for certification of the judgment in A-002379-19 having been submitted to this Court, and the Court having considered the same;

It is ORDERED that the petition for certification is denied.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 1st day of November, 2021.

CLERK OF THE SUPREME COURT

Case 2:21-cv-19904  Document 1  Filed 11/10/21  Page 19 of 27 PageID: 19

State v. Barnes, Not Reported in Atl. Rptr. (2021)

2021 WL 1083680
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Superior Court of New Jersey, Appellate Division.

STATE of New Jersey,
Plaintiff-Respondent,
v.
**Gabriel** C. **BARNES**,
Defendant-Appellant.

DOCKET NO. A-2379-19
|
Submitted March 1, 2021
|
Decided March 22, 2021

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-01-0178.

**Attorneys and Law Firms**

Ferro & Ferro, attorneys for appellant (Nancy C. Ferro, on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Before Judges Fasciale and Rothstadt.

**Opinion**

PER CURIAM

*1 Defendant **Gabriel** C. **Barnes** appeals from a January 21, 2020 order denying his petition for post-conviction relief (**PCR**) without an evidentiary hearing. We affirm.

Following a four-day jury trial in February 2015, defendant was convicted of one count of second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1; four counts of first-degree robbery, N.J.S.A. 2C:15-1; one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); one count of second-degree possession

of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and one count of fourth-degree conspiracy to commit an act of false swearing, N.J.S.A. 2C:5-2, N.J.S.A. 2C:28-2. He was acquitted of one count of fourth-degree false swearing, N.J.S.A. 2C:28-2.

On June 13, 2015, defendant was sentenced to an aggregate term of eighteen years in prison, subject to an eighty-five percent parole ineligibility period in accordance with the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

We affirmed defendant's conviction and sentence in an unpublished opinion. In our opinion, we explained why we rejected defendant's argument that the trial court erred in denying his motion for a new trial, which he claimed was warranted because, among other reasons, the prosecutor improperly "vouch[ed] for the credibility of [witness] Detective Lydell James." We also found no merit to defendant's contentions relating to a photo array, a Wade hearing,[1] or his sentence. State v. **Barnes**, No. A-0210-15T1 (App. Div. Nov. 1, 2017) (slip op. at 2, 13). The Supreme Court later denied defendant's petition for certification. State v. **Barnes**, 233 N.J. 216 (2018).

In our earlier opinion, we summarized the facts leading to defendant's conviction. There, we stated the following:

> At trial, the State presented several witnesses who testified that defendant and another man robbed them at gunpoint. Defendant also struck one of the witnesses several times in the head with the gun, which caused the magazine clip to fall out of the gun onto the ground. Defendant and the other man ran from the scene. They returned later in a pickup truck, lost control of the truck, hit a house, and again ran away.
>
> The police found the magazine clip at the scene, and located the gun on the floor of the truck. Their investigation further revealed that defendant had reported the pickup truck had been carjacked and that the owner of the vehicle was defendant's uncle. After learning that a carjacking had not occurred, and because of the truck's connection to the robbery, the police placed defendant's photo into the array presented to the victims of the robbery. Several victims identified defendant's photo as the man who had robbed them at gunpoint.
>
> [See **Barnes**, slip op. at 3.]

State v. Barnes, Not Reported in Atl. Rptr. (2021)

We also noted that "four witnesses testified that two men robbed them and that one of the men carried a handgun. Three of these witnesses signed sworn statements that they identified defendant in a photo array as the man who was carrying the gun when they were robbed." Id. at 11.

**\*2** On January 23, 2019, defendant filed his petition for PCR and a supporting certification dated January 9, 2019. In his certification, he asserted that his trial counsel "failed to raise an important issue which would have placed the credibility of the principal State[']s witness in serious doubt and could have resulted in the suppression of his testimony."

Defendant stated that the principal witness against him was Detective James, who testified that he did not know defendant, but was actually known to defendant's family because the detective had been dating defendant's mother's cousin. Defendant also added that after his arrest, his "mother met with Detective James who propositioned her and made it clear that if she would cooperate with him in a sexual tryst that he could take care of my case." Defendant also certified that the "sexual meeting" never occurred and Detective James testified against him.

According to defendant, the prosecutor argued to the jury there was no reason for Detective James to conduct an improper photo array in this case because the detective did not know defendant. He contended that had the jury known that the detective actually knew defendant and his family and entered into an agreement with defendant's mother to exchange favorable treatment for sex, it could have totally undermined the State's case against defendant.

Defendant further explained that his trial counsel knew about the situation and was asked to raise it but did not. He added that his counsel should have raised the issue so a hearing could have taken place to determine if Detective James could testify and if so, his attorney should have called his parents to challenge James' credibility.

In further support of his PCR petition, defendant filed a June 20, 2019 certification from his mother, Karen Parker. Parker explained when defendant was arrested, she called the precinct to find out information about her son and later received a call back from Detective James, who she knew on a social basis through her cousin.

A few days after their call, Parker went to the precinct to discuss her son's case. According to Parker, she waited outside

by her car and after Detective James came outside, they "talked for about twenty-five minutes about [her] son[']s case and about things he could do to help [her] son which was in the nature of a favor for a favor." Parker understood that to mean "that we would have sex and he would help my son get off this case because he was handling the case."

Thereafter, Parker returned to the precinct "to have sex with Detective James as we had agreed." She said they met on the second or third floor of the precinct, and James showed her the paperwork about her son's case, including pictures of her "son's line-up." He then walked her "to the back room" to have sex, but the two did not consummate the agreement because he did not have a condom. She said that after that, they agreed to contact each other in a few days.

Although Parker stated that they contacted each other through text, and "exchanged several nude photos," they did not "go through" with their agreement. Defendant's father, who was divorced from Parker but still lived in the same home, discovered the text messages and was angry. He called the police department's Internal Affairs Division but was "persuaded" by Parker's cousin not to proceed with a complaint because it would not help defendant. According to Parker, her cousin also convinced defendant's father not to report it because James would lose his job.

**\*3** Parker also certified that she told defendant's trial counsel about the situation with Detective James, but trial counsel did not use the information. Parker believed that the detective testified against her son because she did not go through with their agreement and James was "getting back at [her] as well as [defendant's] father," because defendant's father contacted Internal Affairs.

Parker also explained that defendant was arrested in October 2014 on different charges, this time a weapons offense, and that defendant gave a statement in that case to Detective James. Parker told defendant's lawyer in that case about her agreement with the detective and she testified at a 2016 suppression hearing, which occurred after defendant's trial in this case, about the agreement. At that hearing, Parker read aloud an April 20, 2015 text between her and the detective. She said "[the message] says, [r]eason we didn't fuck at your job is because you didn't have any – any more condoms, mister. Oh, didn't forget to say that my husband caught our pictures and fucked everything up." She did not read any response from the detective.

Case 2:21-cv-19904   Document 1   Filed 11/10/21   Page 21 of 27 PageID: 21

State v. Barnes, Not Reported in Atl. Rptr. (2021)

In a recording of a telephone conversation between Parker and the detective played at the hearing, Parker explained to James that she saw the situation as "you really went hard on my son because of what his dad did" and James replied, "Absolutely no ... I coulda did things (indiscernible)." The motion to suppress his statement was denied.

On January 3, 2020, the **PCR** judge in this case held oral argument on defendant's petition. In his argument, **PCR** counsel acknowledged that the arguments surrounding the prosecutor's comments and the photo array were rejected on direct appeal—but believed that if Parker's testimony and testimony from defendant's father had been included at trial, "it would have been a very different situation" and would have "cast a shadow over the integrity of the whole trial." He argued that Parker's testimony would have "perfectly" fit into trial because at trial the defense "impugned" the testimony of Detective James and in summations, the prosecutor "felt compelled to vouch for him."

Specifically, the prosecutor sarcastically suggested in summation that Detective James and the other investigators "woke up" and decided to frame defendant for the robbery even though the detective had never seen him before. **PCR** counsel also highlighted that the prosecutor represented in summation that the detective did not know defendant beforehand, but according to Parker's certification, Detective James met Parker at her cousin's party, and he knew the family.

On January 21, 2020, the **PCR** judge issued a written decision and order denying defendant's petition without an evidentiary hearing. The judge first held that defendant failed to demonstrate that counsel's performance was deficient "when measured by an objective standard of reasonableness" and failed to show that "but for counsel's deficiency, the outcome of the proceeding would have been different." In reaching his decision, the **PCR** judge noted that defendant claimed trial counsel was ineffective by not introducing the information from Parker because it could have undermined the credibility of Detective James and the integrity of the entire investigation, including the photo arrays. Moreover, the **PCR** judge added that according to defendant, the value of Parker's testimony was highlighted by defendant's trial counsel in his other criminal case calling Parker as a witness at the suppression hearing for that matter.

**\*4** In rejecting defendant's contention, the **PCR** judge explained that, while not dispositive, the mother's testimony about the alleged agreement had already been found incredible after she testified in 2015 in defendant's other weapons offense case. The judge concluded that "[t]rial counsel may reasonably have believed that a jury similarly may have found such conduct by Parker to render her testimony incredible" at defendant's trial in this case.[2]

The **PCR** judge continued and explained that, in any event, while Parker's testimony could have undermined Detective James' testimony, counsel may have had any number of "valid strategic reasons not to raise the issue at trial." Citing State v. Norman, 151 N.J. 5, 37 (1997), the judge explained that "[s]trong deference is given to trial counsel because the reasoning of trial counsel is typically unknowable in an application for **PCR**" and defendant had not established "a substantial enough reason to overcome the strong presumption of finding that trial counsel had acted within objectively reasonable professional standards."

The judge also concluded that in light of the other evidence of defendant's guilt, the failure to introduce Parker's testimony, even if the result of counsel's error, did not prejudice defendant. Quoting Strickland v. Washington, 466 U.S. 668, 694 (1984), the judge explained that defendant had to demonstrate there was a "reasonable probability that [trial counsel's] deficiencies materially contributed to defendant's conviction.... A reasonable probability is a probability to undermine confidence in the outcome."

The **PCR** judge concluded that here the outcome would not have been different if Parker had been called as a witness because the other evidence of defendant's guilt was overwhelming and unrelated to Detective James' testimony. The judge described the other evidence to include the in-court identifications of defendant by one of the victims and another officer, confirmation by an officer that defendant came to the precinct with a friend to falsely report the carjacking of defendant's uncle's vehicle that defendant used in the commission of the crime, a handgun recovered from the truck and the magazine matching the gun found, and photographs showing bruising on defendant's face that was consistent with one of the victim's testimony that he punched the man that robbed him in the face.

In light of this evidence, the **PCR** judge concluded "[t]he weight of all the evidence on the record was substantial even when giving [defendant] the benefit of discounting [Detective] James' testimony." As such, defendant failed to establish that trial counsel's failure to introduce Parker at trial

Case 2:21-cv-19904   Document 1   Filed 11/10/21   Page 22 of 27 PageID: 22

State v. Barnes, Not Reported in Atl. Rptr. (2021)

"materially affected" the outcome of the trial. This appeal followed.

On appeal, defendant argues the following:

POINT I

THE COURT BELOW ERRED IN DENYING DEFENDANTS POST-CONVICTION RELIEF APPLICATION SINCE BOTH THE PROCEDURAL AND SUBSTANTIVE REQUIREMENTS WERE SATISFIED AND THE COURTS DECISION WAS BASED ON A SUBSTANTIAL FACTUAL ERROR.

Where, as here, the **PCR** judge has not conducted an evidentiary hearing, we review the judge's legal and factual determinations de novo. State v. Aburoumi, 464 N.J. Super. 326, 338-39 (App. Div. 2020). No deference is owed to the **PCR** judge's legal conclusions. State v. Harris, 181 N.J. 391, 421 (2004).

**\*5** We begin our review by acknowledging that defendant correctly points out that the **PCR** judge incorrectly described the suppression hearing at which Parker testified to have been held before his trial in this matter. That hearing was in fact held after defendant's trial. But, as the **PCR** judge clearly stated, the fact that Parker was found to be not credible at the suppression hearing, which evidently the **PCR** judge also presided over, was "not dispositive" of defendant's petition. Contrary to defendant's assertion on appeal, the judge's error does not warrant a reversal as the judge's reasons for denying defendant's petition comported with the applicable legal principles.

"The standard for an ineffective assistance of counsel claim [(IAC)] is ... the same under both the United States and New Jersey Constitutions." State v. Gideon, 244 N.J. 538, 550 (2021). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland, 466 U.S. at 694, and adopted in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient.... [And] [s]econd, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " State v. Arthur, 184 N.J. 307, 319 (2005) (quoting Strickland, 466 U.S. at 689).

An IAC claim based on counsel's failure to call a witness is subject to such deferential review and a court must recognize "[d]etermining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront." Id. at 320. In making this decision, counsel must "consider what testimony a witness can be expected to give, whether the witness's testimony will be subject to effective impeachment[,] ... whether the trier of fact is likely to find the witness credible, and a variety of other tangible and intangible factors." Id. at 320-21.

"[L]ike other aspects of trial representation, a defense attorney's decision concerning which witnesses to call to the stand is 'an art,' ... and a court's review of such a decision should be 'highly deferential.' " Id. at 321 (citations omitted) (quoting Strickland, 466 U.S. at 689, 693); see also State v. Coruzzi, 189 N.J. Super. 273, 321 (App. Div. 1983) ("[T]he decision at trial as to what testimony to present is clearly a matter of trial strategy which is entrusted to the sound discretion of competent trial counsel."). "Mere improvident strategy, bad tactics or mistake do not amount to [IAC] unless, taken as a whole, the trial was a mockery of justice." N.J. Div. of Youth & Fam. Servs. v. V.K., 236 N.J. Super. 243, 258 (App. Div. 1989) (quoting State v. Bonet, 132 N.J. Super. 186, 191 (App. Div. 1975)).

To meet the second prong, a defendant must show that counsel's errors created a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Strickland, 466 U.S. at 694. "Prejudice means 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " State v. Nash, 212 N.J. 518, 542 (2013) (quoting Strickland, 466 U.S. at 687). The prejudice prong is "far more difficult" and except in certain "egregious" circumstances, prejudice must be proven, not presumed. State v. Preciose, 129 N.J. 451, 463-64 (1992) (stating prejudice is more difficult to prove); Fritz, 105 N.J. at 61 ("[W]e determine that a conclusive presumption of prejudice is inappropriate except in cases exemplified by egregious shortcomings in the professional performance of counsel.").

Case 2:21-cv-19904   Document 1   Filed 11/10/21   Page 23 of 27 PageID: 23

State v. Barnes, Not Reported in Atl. Rptr. (2021)

**\*6**  "Under the prejudice prong, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). "A 'reasonable probability' simply means a 'probability sufficient to undermine confidence in the outcome' of the proceeding." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 694). When determining whether a defendant has shown prejudice, the court should consider the strength of the State's evidence. See id. at 556; State v. Pierre, 223 N.J. 560, 583 (2015) ("Important to the prejudice analysis is the strength of the evidence that was before the fact-finder at trial.").

Applying these guiding principles here, we agree with the PCR judge that not only did defendant not establish that his trial counsel's performance was defective, but even if he did demonstrate that trial counsel's failure to call Parker as a witness was a deficiency in trial counsel's performance, the failure to do so was not prejudicial. The other evidence of defendant's guilt was indeed overwhelming and unrelated to Detective James. For that reason, defendant failed to satisfy Strickland's second prong. As defendant did not establish a prima facie claim of IAC, an evidentiary hearing was not warranted. State v. Marshall, 148 N.J. 89, 158 (1997).

Affirmed.

### All Citations

Not Reported in Atl. Rptr., 2021 WL 1083680

---

Footnotes

1   United States v. Wade, 388 U.S. 218 (1967).

2   As defendant properly notes on appeal, the suppression hearing actually took place in February 2016, after defendant's trial in this action, so his trial counsel could not have relied upon the judge's finding in that case.

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:21-cv-19904   Document 1   Filed 11/10/21   Page 24 of 27 PageID: 24

State v. Barnes, Not Reported in Atl. Rptr. (2017)

2017 WL 5076359
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Superior Court of New Jersey, Appellate Division.

**STATE** of New Jersey,
Plaintiff–Respondent,

v.

**Gabriel** C. **BARNES**,
Defendant–Appellant.

DOCKET NO. A–0210–15T1
|
Submitted September 27, 2017
|
Decided November 1, 2017

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13–01–0178.

**Attorneys and Law Firms**

Ferro and Ferro, attorneys for appellant (Nancy C. Ferro, on the briefs).

Robert D. Laurino, Acting Essex County Prosecutor, attorney for respondent (Kayla E. Rowe, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Before Judges Alvarez and Currier.

**Opinion**

PER CURIAM

 **\*1** Defendant **Gabriel** C. **Barnes** appeals from his conviction following a jury trial and the subsequent denial of his motion for new trial, arguing that the prosecutor made improper comments in both his opening statement and closing argument. Defendant also contests a pre-trial ruling and the sentence. After a review of these contentions in light of the record and applicable legal principles, we affirm.

Defendant was charged in the indictment with second-degree conspiracy to commit robbery, N.J.S.A. 2C:5–2, N.J.S.A.

2C:15–1(b); four counts of first-degree armed robbery, N.J.S.A. 2C:15–1; second-degree unlicensed possession of a firearm, N.J.S.A. 2C:39–5(b); second-degree unlicensed possession of a firearm with purpose to use it unlawfully against the person or property of another, N.J.S.A. 2C:39–4(a); fourth-degree conspiracy to commit false swearing, N.J.S.A. 2C:5–2, N.J.S.A. 2C:28–2; and fourth-degree making a false statement under oath or equivalent affirmation, N.J.S.A. 2C:28–2.

Prior to trial, defendant filed a motion challenging the photo array procedure and seeking a Wade hearing.[1] After hearing oral argument and listening to the audiotape of the identification procedure, the judge denied the motion. A jury convicted defendant on all counts except the fourth-degree making a false statement under oath. A motion for new trial was denied on June 8, 2015, and defendant was sentenced to an aggregate prison term of eighteen years, with the requisite period of parole ineligibility.

At trial, the **State** presented several witnesses who testified that defendant and another man robbed them at gunpoint. Defendant also struck one of the witnesses several times in the head with the gun, which caused the magazine clip to fall out of the gun onto the ground. Defendant and the other man ran from the scene. They returned later in a pickup truck, lost control of the truck, hit a house, and again ran away.

The police found the magazine clip at the scene, and located the gun on the floor of the truck. Their investigation further revealed that defendant had reported the pickup truck had been carjacked and that the owner of the vehicle was defendant's uncle. After learning that a carjacking had not occurred, and because of the truck's connection to the robbery, the police placed defendant's photo into the array presented to the victims of the robbery. Several victims identified defendant's photo as the man who had robbed them at gunpoint.

In his opening statement to the jury, in referring to defendant returning to the scene of the robbery, the prosecutor made the following remarks:

> Now, as the judge instructed, the defendant is under no obligation to testify in this case. He's under no obligation to provide any evidence. So we might never know why he came back. But the **State** submits that it will offer adequate evidence for you to make the reasonable inference that he came back for that magazine.

He wanted to clear any link to his culpability. He knew what he had done and knew what he had left, so he came back to get it.

**\*2**  Defense counsel did not immediately object but instead posited an objection at the close of the opening statements, **stating** that the prosecutor impermissibly commented on defendant's right to testify. The judge agreed and advised that he would instruct the jury that defendant had the right to remain silent throughout the trial, and they should not draw any adverse inferences from the assertion of that right.

In closing arguments, the prosecutor commented:

> For some reason, [on] August 26, 2012 [the police officers] woke up and they said we're nailing **Gabriel Barnes** and ... Detective James[2] ... decided to go along and he said I'm going to manipulate this photo array for all my years[,] 12, 13[,] years as a detective in the Major Crimes Bureau.

Defense counsel objected to this testimony, asserting that it was an impermissible argument to vouch for a police officer's credibility. The trial judge overruled the objection, **stating** that the prosecutor was commenting on the credibility of the witnesses in response to defense counsel's comments in summation that the testimony of James and the other officers was not believable. The prosecutor continued,

> Detective James is going to wake up and frame this guy right here, **Gabriel Barnes**, never seen him before. That's what he did. August 26 [James] got some imaginary phone call [that] said hey guys, it's time to frame **Gabriel Barnes** and that's what he did .... That's what defense counsel told you.

Following the jury's verdict, defendant moved for a new trial, arguing that the verdict was against the weight of the evidence, that the prosecutor had improperly vouched for the credibility of a witness, and violated defendant's Fifth Amendment right to remain silent by discussing his failure to testify. In a June 8, 2015 written decision, the trial judge denied the motion.

In his determination, the judge noted that in light of the "ample" physical evidence and testimony from witnesses, it was "reasonable for the jury to reach the verdict that it did and to convict the defendant." The trial judge found that the verdict was not against the weight of the evidence.

The trial judge also concluded that the prosecutor's comments in opening and closing were not improper. Regarding the prosecutor's statements on defendant's silence, the judge found that

> [t]he prosecutor was not inviting the jury to draw an adverse inference from the defendant's failure to testify; rather, he was hypothesizing as to why the defendant returned to the scene of the crime .... Therefore, the prosecutor's comments only went to support his theory that the defendant returned to the scene of the crime to retrieve the magazine that was left during the commission of the crime.

Furthermore, because he had instructed the jury on defendant's right to remain silent, the judge determined that defendant was not deprived of his Fifth Amendment privilege.

The judge also found that the prosecutor's statements regarding Detective James's credibility were not improper. He **stated** that the prosecutor "was merely trying to boost Detective James's credibility to counter the defense's argument of suggestiveness in the photo array[,]" and was not vouching for the detective's credibility.

On appeal, defendant raises the following arguments:

> POINT ONE: THE TRIAL COURT ERRED IN DENYING THE MOTION FOR A NEW TRIAL.

> **\*3**  A. The court erred in finding that the prosecutor did not impermissibly infringe on defendant's Fifth Amendment privilege against self-incrimination in the opening statement

> B. The court erred in finding that the **State** did not commit misconduct by improperly vouching for the credibility of Detective Lydell James

> C. The court erred in ruling that the verdict was not against the weight of the evidence

> POINT TWO: THE COURT ERRED IN FINDING THAT THE PHOTO ARRAY WAS PROPERLY CONDUCTED AND MET THE WADE STANDARDS AND DENIED THE REQUEST FOR A WADE HEARING.

> POINT THREE: THE IMPOSITION OF THE AGGREGATE CUSTODIAL TERM OF EIGHTEEN YEARS SUBJECT TO THE NERA PAROLE INELIGIBILITY PERIOD WAS MANIFESTLY

EXCESSIVE AND A MISAPPLICATION OF JUDICIAL SENTENCING DISCRETION.

We review a trial court's decision to deny a motion for a new trial for an abuse of discretion, **State** v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000), and will not reverse the decision "unless it clearly appears that there was a miscarriage of justice under the law." **State** v. Afanador, 134 N.J. 162, 178 (1993) (quoting R. 2:10–1).

Defendant asserts that the prosecutor improperly made statements in both his opening and closing remarks that constitute prosecutorial misconduct. When reviewing a prosecutor's statements, an appellate court must evaluate " 'the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial' and conclude that 'prosecutorial misconduct is not grounds for reversal of a criminal conviction unless the conduct was so egregious as to deprive defendant of a fair trial.' " **State** v. Wakefield, 190 N.J. 397, 437 (2007) (citation omitted) (quoting **State** v. Papasavvas, 163 N.J. 565, 625 (2000)), cert. denied, 552 U.S. 1146, 128 S. Ct. 1074, 169 L.Ed. 2d 817 (2008).

It is a fundamental principle of our criminal justice system that "[a]n accused has the right to remain silent and no negative inference can be drawn against him or her for maintaining that silence." **State** v. Scherzer, 301 N.J. Super. 363, 435–36 (App. Div.), certif. denied, 151 N.J. 466 (1997). The **State** may not comment to the jury about defendant's silence. Id. at 436. We are satisfied that the prosecutor did not violate that principle.

In his opening statement, the prosecutor outlined the evidence the **State** expected to present to support the charges. After describing the events surrounding the robbery and defendant's departure from the scene, the prosecutor told the jury that defendant returned to the area five to ten minutes later. The prosecutor reiterated the instruction already issued by the judge that the defendant was under no obligation to either provide any evidence or testify. He continued, "[s]o we might never know why [defendant] came back."

The prosecutor's next sentence informed the jury that the **State** would provide sufficient evidence for them to infer that defendant came back for the magazine that had fallen onto the ground. Although the comments, standing on their own, could be construed as defendant argues, when read in the context of the preceding and succeeding sentences, they are harmless. The **State** was merely outlining its version of the events and defendant's actions, and advising that it would be

presenting the necessary evidence from which the jury could draw inferences.

**\*4** Defendant argues that these comments are similar to those found to be egregious enough to require a new trial in **State** v. Pickles, 46 N.J. 542, 566–68 (1966), and **State** v. Black, 380 N.J. Super. 581, 594–95 (App. Div. 2005), certif. denied, 186 N.J. 244 (2006). We disagree. Here, the prosecutor neither implied that defendant was withholding crucial information about the case, nor put defendant in a position where he would have to testify to counteract an adverse inference about his silence. When the comments are viewed in the context of the prosecutor's argument, the trial judge did not abuse his discretion in denying a new trial on those grounds.

Prosecutors are generally afforded "considerable leeway" in their closing arguments. **State** v. Smith, 167 N.J. 158, 177 (2001). However, a prosecutor cannot offer his or her personal opinion as to the veracity of any testimony. **State** v. Michaels, 264 N.J. Super. 579, 640 (App. Div. 1993), aff'd, 136 N.J. 299 (1994). Opinions regarding the credibility of law enforcement officers are assessed "very carefully." **State** v. Hawk, 327 N.J. Super. 276, 285 (App. Div. 2000) (citing **State** v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993)). A prosecutor may not "imply that police testimony should be accepted, 'not because of its believability but because the witnesses were policemen.' " Staples, supra, 263 N.J. Super. at 606 (quoting **State** v. Jones, 104 N.J. Super. 57, 65 (App. Div. 1968), certif. denied, 53 N.J. 354 (1969)).

Defendant asserts that the prosecutor violated this tenet in stating: "[Detective James] said I'm going to manipulate this photo array for all my years[,] 12, 13[,] years as a detective in the Major Crimes Bureau." After defendant's objection and a sidebar conference, the prosecutor clarified his statement, stating, on "August 26th [James] got some imaginary phone call [that] said hey guys, it's time to frame **Gabriel Barnes** and that's what he did .... We want to talk about facts. What fact is there about that?"

The prosecutor did not state to the jury that the detective would be risking his career or face serious charges if he conducted himself as defense counsel intimated in his summation. See **State** v. Frost, 158 N.J. 76, 85–86 (1999) (stating that it was "egregious" to suggest that police officers would not lie because of the "magnitude" of charges that could be brought against them). We are satisfied that the prosecutor was reacting to and countering defense counsel's

Case 2:21-cv-19904   Document 1   Filed 11/10/21   Page 27 of 27 PageID: 27

State v. Barnes, Not Reported in Atl. Rptr. (2017)

closing comments on the detective's credibility, and asserting that the evidence did not support defendant's argument. Therefore, the prosecutor's comments were not "so egregious that [they] deprived defendant of the right to a fair trial." **State** v. Gorthy, 226 N.J. 516, 540 (2016) (quoting **State** v. Josephs, 174 N.J. 44, 124 (2002)).

We are also satisfied that the verdict was not against the weight of the evidence. We must respect the jury's verdict unless no reasonable jury could have reached it. Afanador, supra, 134 N.J. at 178. "Where the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced." **State** v. Smith, 262 N.J. Super. 487, 512 (App. Div.) (citing **State** v. Haines, 20 N.J. 438, 446–47 (1956)), certif. denied, 134 N.J. 476 (1993).

Here, four witnesses testified that two men robbed them and that one of the men carried a handgun. Three of these witnesses signed sworn statements that they identified defendant in a photo array as the man who was carrying the gun when they were robbed. As the determination of a witness credibility is entirely at the discretion of the jury, ibid., there was more than sufficient evidence for a jury to reasonably find defendant guilty of these crimes. Therefore, the verdict is not against the weight of the evidence. Afanador, supra, 134 N.J. at 178.

 *5  We turn to defendant's argument that the court erred in denying its motion for a Wade hearing to determine the admissibility of a witness's identification of defendant. In making that determination, a court must first "decide whether the procedure in question was in fact impermissibly suggestive." **State** v. Madison, 109 N.J. 223, 232 (1988). The court then must "focus on the reliability of the identification." Ibid. If the identification is "reliable despite the impermissibly suggestive nature of the procedure, the identification may be admitted into evidence." Ibid. The totality of the

circumstances should be considered in determining the reliability. Id. at 233.

A court only needs to conduct a Wade hearing if "defendant offers some evidence of suggestiveness." **State** v. Henderson, 208 N.J. 208, 290 (2011). The court has discretion not to conduct the hearing if it concludes that "defendant's initial claim of suggestiveness is baseless." Id. at 290–91.

Defendant claims that a "tapping sound" heard on the recording of the photo array procedure indicated that police were telling the witnesses which photo to choose. The trial judge listened to the recording and found that, based on the timing of the tapping sound, it was apparent that the sound came from the witnesses tapping the photo array, not the police. According to the judge, the tapping occurred almost simultaneously with the witnesses claiming "that's him, that's him." The court found that there was nothing to indicate that the photo array procedure was "impermissibly suggestive." Therefore, the trial judge did not err in exercising his discretion not to hold a Wade hearing.

In his final point, defendant contends, without elaboration, that the imposed sentence was excessive. We disagree. The judge's findings and balancing of the aggravating and mitigating factors are supported by adequate evidence in the record, and the sentence is neither inconsistent with sentencing provisions of the Code of Criminal Justice nor shocking to the judicial conscience. See **State** v. Bieniek, 200 N.J. 601, 608 (2010); **State** v. Cassidy, 198 N.J. 165, 180–81 (2009).

Affirmed.

### All Citations

Not Reported in Atl. Rptr., 2017 WL 5076359

---

Footnotes

1    U.S. v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed. 2d 1149 (1967).
2    Detective Lydell James testified as one of the investigating police officers on this case.

---

**End of Document**                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   4